1817.

*Philadelphia.*

MILLER and others *against* BEATES and another exe-
cutors of GEORGE SCHLOSSER, deceased.

*Monday,*
December 15.

NEW TRIAL.

Where a
person has
been absent
many years
without being
heard of, and
no circum-
stance appears
to account for
it, a jury may
and ought to
presume his
death.
    Therefore
where 14
years and 9
months had
elapsed, be-
tween the
time of a per-
son's being
last heard of,
who had lived
in Philadel-
phia, and the
commence-
ment of the
action, and
when last
heard of, he
was at a place
between
which and
Philadelphia,
there was a
free commu-
nication, and
it was then
his intent to
return to Phi-
ladelphia,
*Held,* that the
jury might
and ought to
presume his
death without
issue, and that
a legatee over
of personal
property, on
such event,
might recover
without giving
security.

THIS action was brought to *July* Term, 1817, and was
tried at the *Nisi Prius,* on the 15th *November* last, before
TILGHMAN C. J.

The plaintiffs were legatees and residuary devisees under
the will of *George Schlosser,* deceased, and in order to reco-
ver in this action it was necessary to prove, that *John G.
Schlosser* was dead without issue.  It was proved on the
part of the plaintiff, that *John G. Schlosser* went beyond sea,
unmarried, many years ago; and the last that was heard of
him was by a letter from himself to his father, dated at
*Bourdeaux, November* 24th, 1802, in which he mentioned,
that he should endeavour to get a passage to the *United
States,* and hoped to be in *Philadelphia* the next summer.
Pains had been taken to ascertain whether he died in *France;*
but no evidence of his death could be obtained.  The jury,
by consent of parties, found for the plaintiff; and it was
agreed, that there should be a new trial, unless the Court
should be of opinion, that the evidence afforded ground for a
legal presumption of the death of *John G. Schlosser.*

*Rawle,* for the plaintiffs, contended, that when a person
has been absent seven years without having been heard of,
the legal presumption is, that he is dead.  Thus, if a woman
plead coverture, it is not sufficient for her to prove that she
was married to a man who went abroad twelve years before
the commencement of the suit; she must prove that he has
been heard of within seven years before commencing 'the
suit; otherwise, the jury might presume his death at the
time of her promise. *Phill. Ev.* 152. So in the statute 1 *Jac.*
1. c. 11, against bigamy, there is an exception in favour of per-
sons whose husband or wife has been continually absent for
seven years.  The statute 19 *Car.* 2. c. 6, (which is reported
by the Judges of the Supreme Court to extend to *Pennsyl-*

1817.

MILLER
and others
v.
BEATES
and another
executors of
SCHLOSSER,
deceased.

*vania,*) provides, that if persons for whose lives estates are granted, absent themselves seven years, and there be no proof of their living, they shall, in any action, by lessors or reversioners to recover the estate, be counted as dead. This statute has been considered to include within its equity a remainder man. *Holman* v. *Exton.(a)* Here the period during which *John G. Schlosser* has been absent, and not heard of, notwithstanding the pains taken to trace him, is more than double the period fixed by the common and statute law, as a presumption of death.

*Binney,* for the defendant.

This suit is quite amicable ; and it is the wish of the defendants to pay the legacy, provided it can be done with safety. There is no rule for legal presumption, short of the usual life of man, in such a case as this. Here must be presumed not only a death, but a dying without issue ; and the question is, whether the law will presume this after fifteen years absence, without being heard of. There is no presumption on the subject at common law ; if there had been, there was no occasion for statutory provisions. If there be, what is the time it fixes ? The probability of death within any given time is more or less according to circumstances. Life is to be intended, until the contrary is proved. *Throgmorton* v. *Walton.(b)* The case of bigamy is not like the present. There no injustice would be done to any one. So in the case of real estates, if the person supposed to be dead should appear alive afterwards, the land remains to be enjoyed, and he might recover the *mesne* profits. But the mischief is great, where personal property is paid over. The Court, therefore, should not permit a recovery without security, to guard against insolvency, in case of life. No case on the subject of personal property is to be found in the *English* books. By the civil law, proof of death is required to be certain when it is the foundation of an action, as where one claims as heir of the deceased. By the code *Napoleon,* security is required to be given ; which is not discharged till 100 years from the birth of the absentee.

TILGHMAN C. J. The common law has fixed no period,

(a) *Carth.* 246.          (b) 2 *Roll's Rep.* 461.

1817.

MILLER
and others
v.
BEATES
and another
executors of
SCHLOSSER,
deceased.

after the expiration of which, death should be presumed. But there are two statutes in *England*, creating a presumption in certain cases. By the statute punishing bigamy as a felony, which does not extend to *Pennsylvania*, because it was made in the first year of *James* I. (before the grant to *William Penn*,) there is an exception in favour of persons, whose husbands, or wives, have been continually remaining in parts beyond sea, for seven years before the second marriage, or who have been absent within the king's dominions for seven years, without being known to be living within that time. And by the statute of 19 *Car.* 2, c. 6, (which extends to *Pennsylvania*,) it is enacted, that if any person or persons, for whose lives, estates are granted, absent themselves for seven years together, and no evident proof be made of their being living, in any action commenced by the lessors or reversioners, for recovery of the premises, they shall be counted as dead. The Courts in *England* have adopted and extended the principle of these statutes to cases not comprehended in them ; to the case, for instance, of a person seised of lands in fee simple, who has been absent beyond sea, without being heard of, for seven years. But, it is contended by the counsel for the defendants, that there is a wide difference between cases affecting *real* and *personal* property. In case of real property, no great harm is done, if the presumption should prove false, because the property remains, and may be recovered by the absentee who was falsely presumed to be dead. But where money is paid on a false presumption, it may be lost; because, although an action would lie for the recovery of it, against those to whom it was paid, yet they may be insolvent. It is true, that there is a difference between land and money, and that the injury may be greater to the absentee, when his money is paid away, than when his land is taken possession of. And yet, we do not see, that the English Courts have acted on that distinction ; for in *Phill. Evid.* 152, it is said, that in an action of *assumpsit* against a woman who pleads coverture, it is not sufficient for her to prove that she was married to a man who went beyond sea, twelve years before the commencement of the action ; unless she prove also, that he was *alive within seven years*, because without this additional proof, *the jury might presume that he was dead, at the time of the promise.* There are certain rules, by which jurors ought to govern them-

.selves, although it is their right to decide facts.  Whether

1817.

MILLER
and others
v.
BEATES
and another
executors of
SCHLOSSER,
deceased.

a man was alive, or not, at a certain time, is a fact, which
the jury must decide, and yet, if under certain circumstances,
the probability of death is great, it may be said, that the
jury ought to presume the death without positive proof.
There is no positive law, fixing a presumption of the pay-
ment of a bond ; and yet, if the interest has remained unpaid
for twenty years, and there is no circumstance accounting
for this long cessation of payment, there arises so strong a
presumption of the satisfaction of the debt, that the jury not
only may, but ought to presume it, and unless they do, the
Court would order a new trial.  Still payment is, in its
nature, a fact to be decided by the jury.  It is so with all
other presumptions.  Now as to the proof of death ; when
a man has been proved to be living, the first general pre-
sumption is, that he continues to live, unless the contrary be
proved ; the proof of death is thrown, therefore, on the party
who asserts it.  But there may be circumstances, which
destroy the first general presumption of life, and induce a
contrary presumption, viz. of death ; and in such case,
the burthen of proving the life, will be thrown upon the
party who asserts it.  For instance, although a. person who
has gone from *Philadelphia* to *France*, may be presumed to
be living, although he be not heard of for several years, be-
cause such things commonly happen ; yet when *many years*
have elapsed without hearing from him, and no circumstance
is shewn, by which this may be reasonably accounted for, it
is so contrary to general experience, that he should be living,
that the jury may, and ought to presume his death.  For, in
such cases, what is to be done ?  The jury must find the fact one
way or the other.  They are not to give a verdict by caprice,
but upon principle.  Therefore, when a man's being alive is
inconsistent with the other fact proved in the cause, accord-
ing to general experience, it ought to be presumed, that he
is not alive.  I find it laid down in 2 *Peake's Law of Evid.*
356; that where one has not been heard of for *many years*,
this is *prima facie* evidence, to presume his death without
issue, until the contrary be proved.  This appears to me to
be quite reasonable.  *Many* years is an indefinite expression.
I am not for fixing, at present, any precise period, after which
a presumption of death arises.  But I think myself safe in
saying, that in the present instance, considering, that fourteen

1817.

MILLER
and others
v.
BEATES
and another
executors of
SCHLOSSER,
deceased.

years and nine months had elapsed, between *John G. Schlosser's* being last heard of, and the commencement of this action ; that when last heard of, he was at a place between which and the city of *Philadelphia* there was a free communication, and it was then his intent to return soon to *Philadelphia ;* his being now in life, would be contrary to the usual course of things ; that the jury might, and ought to presume his death, and if the case were to come to another trial, the Court would so direct them.    As to the injury which might arise to *John G. Schlosser*, by this presumption, in case he should be alive, I think it ought not to be regarded.    He would have his action against those to whom the money will be paid; and although he might lose by their insolvency, yet that would not be a greater evil than would arise from the establishment of a principle, that the life of a man ought to be presumed, under circumstances which usually attend death, merely because positive proof of death could not be obtained.  I am bound to mention, in justice to the defendants, in this cause, that they have no wish to reap any benefit from the detention of the money in question.   Their object is safety ; they are willing to pay to the persons who are authorised by law to receive ; and, considering the circumstances of the case, I think they were prudent in withholding the money, till the plaintiffs established their right by legal adjudication.

GIBSON J. was absent.

DUNCAN J. The question here is, had the event taken place, on what the right of the present plaintiffs to demand this legacy had accrued?    This case does not fall within any statutory provision.    The evidence to establish the fact of the death of *John G. Schlosser*, without issue, must be by common law proof.  *John G. Schlosser*, being once in existence, it is incumbent on the party claiming on the allegation of his death, to prove that fact by satisfactory evidence. This the law does not require to be by positive proof of the fact ; but, like all other facts, may be made out by the best proof the nature of the fact is capable of ; circumstantial evidence.  Now here, the proof does not depend on evidence of absence beyond sea for seven years, but for nearly fifteen years.   The last account we have of this man, is from him-

self. He was then free, and not under any duress. He might go where he pleased; and he declared his intention to return to his native country, and to his father, as soon as he could procure a passage. Inquiries had been made at *Bordeaux*, the place where he was proven last to have been, and no account *obtained* of what had become of him. This causes a presumption of death, sufficient to repel the general presumption of life. It is *prima facie* evidence of his death without issue, and throws off from the person alleging death, the positive proof of that fact, and casts the burden of the proof of life on the party alleging it.

In *Rowe* v. *Hasland*, (1 *W. Bl.* 404,) the law on this subject is thus laid down. In establishing a title upon a pedigree, where it may be necessary to lay a branch of the family out of the case, it is sufficient to shew, that the person has not been heard of for many years, to put the opposite party upon proof that he still exists. Many persons go to the *East* and *West Indies*, and are never heard of again. And in 2 *Peake's Evid.* 356, the reputation of the family, that the relative went abroad, and died there, or inscriptions on tomb-stones, &c. which are a species of reputation, are sufficient; and if he has not been heard of for many years, this in every case is *prima facie* evidence, sufficient to presume his death without issue, until the contrary is proved. It is true, these cases may refer to ejectments, and, as is observed by Lord MANSFIELD, in the case of *Rowe* v. *Hasland*, what is done on such trials is no injury to the man, or to his issue, if he should afterwards appear and claim the estate. But I do not know that this consideration can change the rules of evidence. The Courts do not require less evidence in ejectments, than in other cases, on the reason that the trial does not conclude a party in interest. In this case, if there was a devise of real estate together with personal, and a limitation over, on the death of the first taker, that, on the trial for the land, the evidence of death should be judged sufficient, and yet, on a suit for the legacy, in the same Court, it should be deemed insufficient, would be a strange inconsistency. But the same rule of evidence must hold, let the trial be real, personal, or mixed. For we find in personal actions, that the same presumption exists. As on the plea of coverture, in a personal action, the death of the husband may be presumed. In another case, merely personal,

1817.

MILLER
and others
*v.*
BEATES
and another
executors of
SCHLOSSER,
deceased.

1817.

MILLER
and others
v.
BEATES
and another
executors of
SCHLOSSER,
deceased.

as in action on a recognisance against special bail, who pleads the death of the principal, before *capias ad satisfaciendum* returned, and issue taken, those circumstances which tended to prove the death of the principal, might be given in evidence, from which the presumption of death would be raised. If a bill had been filed in a Court of Chancery for this legacy, it would appear to me, that a Chancellor would decree payments, founding his decree on the presumption of the death of *John G. Schlosser.*

I am, therefore, of opinion, that sufficient evidence was given to rebut the presumption of *John G. Schlosser* being in existence; and that the *prima facie* evidence of his *death*, without issue, cast on the defendants the *onus* of proving him *alive*, or that he left issue, and that it would have been the duty of the Judge, so to have instructed the jury. It would, therefore, be a useless delay and expense, to submit it to another jury, when, in point of law, the result ought to be the same, a verdict for the plaintiffs.

New trial refused.