904 A.2d 721 (2006)
387 N.J. Super. 380
Bhupinder SINGH and Shrinathji Enterprise, Plaintiffs-Appellants,
v.
Jagdish SIDANA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 2006.
Decided August 11, 2006.
*722 Grisel Senande-Murphy, Clark, argued the cause for appellants (Killian & Salisbury, attorneys; Eugene Killian, Jr., of counsel; Ms. Senande-Murphy, on the brief).
Amirali Y. Haidri, Union, argued the cause for respondent.
Before Judges KESTIN, HOENS and R.B. COLEMAN.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
In this case of first impression, plaintiffs appeal from the trial court's order denying recognition and enforcement of a California judgment entered in their favor against defendant. In reversing that determination, we hold that New Jersey's laws pertaining to judgments and their enforcement apply to afford a foreign judgment the same life as a domestic judgment where enforcement proceedings were commenced in New Jersey while the foreign judgment was still viable in the rendering state, even though the life of that judgment has since expired under the laws of that state.
Plaintiffs had filed the judgment in New Jersey pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA), N.J.S.A. 2A:49A-25 to -33, this State's selected means for discharging its Full Faith and Credit obligations. U.S. Const. art. IV, § 1. See Enron (Thrace) Exploration & Prod. BV and ECT Europe Fin., Inc. v. Clapp, 378 N.J.Super. 8, 15, 874 A.2d 561 (App.Div.), certif. denied, 185 N.J. 392, 886 A.2d 662 (2005). The trial court ultimately held that the expiration of the judgment in California, after plaintiffs had filed it in New Jersey during its life, precluded its enforcement in New Jersey. On appeal, plaintiffs contend that the trial court erred by failing to apply N.J.S.A. 2A:14-5 and N.J.S.A. 2A:49A-27 according to their terms. We agree.
On October 12, 1993, the Superior Court of California entered a default judgment in favor of plaintiffs and against defendant for $102,423. On October 2 and 10, 2003, respectively, plaintiffs filed copies of the judgment with the New Jersey Superior Court, Middlesex County, and with the judgment unit of the Superior Court Clerk's office. The affidavit of plaintiffs' attorney, referred to in both transmittals, was not filed until October 15, 2003, however.
In a motion dated November 3, 2003, returnable on November 21, 2003, defendant sought an order denying enforcement and staying execution of the judgment. The matter did not come before the trial court for many months, apparently because the court had permitted a period of discovery regarding a question of service of process in the underlying suit.
In the trial court's September 2, 2004 oral opinion, the judge referred to "oral argument in this Court on 8/27/04,"[1] in which both counsel had
stated that they would not be producing any witnesses for a hearing, which they had requested, so that the Court could determine the issue of credibility that existed in this matter [regarding the validity of personal service in the underlying suit]. Having so waived their request *723 for a hearing, the Court is prepared to rule upon the papers.
After analyzing the facts as presented in the light of California law, the court denied defendant's motion because there had been no motion in the California court, within the time required under that State's law, to vacate the default and judgment that had been entered in the underlying matter.
Following this denial, defendant sought to vacate the judgment in California, and learned that, under California law, the judgment had expired after ten years. Defendant then filed a notice of appeal from the September 2, 2004 order. In an order entered on November 30, 2004, on defendant's motion emphasizing this newly discovered fact, we temporarily remanded the matter to the trial court for reconsideration of its order.
On March 11, 2005, the trial court vacated its September 2, 2004 order, and granted defendant's motion for an order denying recognition and enforcement of the judgment. Plaintiffs appealed from the March 11, 2005 order, and defendant's earlier appeal was administratively dismissed.
In reaching his decision on reconsideration of his earlier order, the trial court judge opined that there were two ways to analyze the matter in "conjunction with docketing the judgment in New Jersey[.]"
[T]he person seeking to enforce the judgment has the obligation to not only extend the judgment in California but also to file and docket the judgment in New Jersey for collection.
An additional way of looking at it is to suggest that the filing of the judgment in New Jersey ... then becomes a rule of procedure. What is the New Jersey procedure? The New Jersey procedure is that that judgment continues to be in full force and effect, even though the California judgment, the underlying judgment, has expired. This Court believes that the first application is the application which probably is correct.
The Court recognizes that there may be a hot dispute on this matter, but since the California judgment no longer exists, there is nothing left for the New Jersey Court to enforce and, accordingly, the application to dismiss the New Jersey judgment and find it unenforceable is granted.
The UEFJA, as adopted in New Jersey, provides for the filing of a properly authenticated foreign judgment with the Clerk of the Superior Court.
The clerk shall treat the foreign judgment in the same manner as a judgment of the Superior Court of this State. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a Superior Court of this State and may be enforced in the same manner.
[N.J.S.A. 2A:49A-27.]
A related, but independent, statute, adopted in 1799 and not substantively amended since, see Ehnes v. Weldon, 13 N.J.Super. 23, 25, 80 A.2d 123 (App.Div.), certif. denied, 7 N.J. 577, 83 A.2d 379 (1951), provides:
A judgment in any court of record in this state may be revived by proper proceedings or an action at law may be commenced thereon within 20 years next after the date thereof, but not thereafter. An action may be commenced on a judgment obtained in any other state or country within 20 years next after the date thereof or within the period in which a like action might be brought thereon in that state or country, whichever period is shorter, but not thereafter.
[N.J.S.A. 2A:14-5.]
*724 In California, the applicable period is shorter. Judgments must be enforced within ten years, Cal.Civ.Proc.Code § 683.020 (Deering 2006), subject to renewal for an additional ten years on application made before the initial ten-year period runs. Cal.Civ.Proc.Code § 683.120 to .130(a) (Deering 2006). It is undisputed that no application was made to extend the California judgment involved in this matter before its initial ten-year life expired.
As the trial court recognized, plaintiffs docketed their California judgment in New Jersey, at the latest on October 10, 2004, two days before the ten-year limitation period provided under California law expired. We agree with the trial court that the filing, a few days later (after the ten-year period had run), of the supporting certification of counsel required to complete the first step in the process of enforcement, see N.J.S.A. 2A:49A-28, does not render the filing untimely.
The question we are called upon to address, never before decided in this State, is whether plaintiff's filing, in an effort to domesticate the California judgment before its ten-year life expired, operated to create a new legal right in New Jersey, or whether the enforceability of the judgment continued to depend upon the standards of California law. We begin with the understanding that our statutes are designed to do nothing more or less than provide a rule of law to govern relationships between judgment creditors and judgment debtors in this State. See Sonntag Reporting Serv., Ltd. v. Ciccarelli, 374 N.J.Super. 533, 539, 865 A.2d 747 (App.Div.2005).
Once the process of domesticating the California judgment in New Jersey began, New Jersey law applied to questions of validity and enforcement. See N.J.S.A. 2A:49A-27. The pertinent provisions of N.J.S.A. 2A:49A-27 clearly require that "[t]he clerk . . . treat the foreign judgment in the same manner as a judgment of the Superior Court of this State .... [with] the same effect and ... subject to the same procedures, defenses and proceedings[.]" Plaintiffs argue that, under this provision, their effort to domesticate the California judgment "created a new judgment that became enforceable in New Jersey in accordance with New Jersey law."
Equally clearly, the germane terms of N.J.S.A. 2A:14-5 provide that "[a]n action may be commenced on a judgment obtained in any other state ... within 20 years ... or within the period in which a like action might be brought thereon in that state ..., whichever period is shorter, but not thereafter." (Emphasis supplied.) The focus of this provision is manifestly on the commencement of the action to enforce the foreign judgment, not on the foreign judgment's continuing validity whenever such questions as may be raised are addressed. As long as a judgment is viable and enforceable in the rendering state when domestication proceedings are commenced, that judgment becomes enforceable, by the terms of New Jersey law, at that moment. Even under California's analogue to our statutes, "the ten year period for a valid and enforceable judgment of a sister state runs anew from the time of its filing in the state superior court, provided that at the time ... the judgment is not then time barred[.]" Marx v. Go Publ'g Co., 721 F.2d 1272, 1273 (9th Cir.1983). The federal rule is the same under 28 U.S.C. § 1963, in the Ninth Circuit, see ibid., and elsewhere, see Home Port Rentals, Inc. v. International Yachting Group, Inc., 252 F.3d 399, 404-07 (5th Cir.2001); Stanford v. Utley, 341 F.2d 265, 266-68 (8th Cir.1965); cf. Matanuska Valley Lines, Inc. v. Molitor, 365 F.2d 358, 359-61 (9th Cir.1966) (distinguishing Stanford), cert. denied, 386 U.S. 914, 87 S.Ct. 864, 17 L.Ed.2d 786 (1967); United *725 States v. Kellum, 523 F.2d 1284, 1289 (5th Cir.1975) (same); Robinson v. First Wyoming Bank, N.A., 274 Mont. 307, 909 P.2d 689, 693-94 (1995) (same).
Defendant argues that this result is tantamount to holding that a judgment such as the one involved here has a thirty-year life (California's ten years plus New Jersey's twenty years) in violation of the venerable substantive rule announced by the Court in Gulick v. Loder, 13 N.J.L. 68 (Sup.Ct.1832), that a judgment of over twenty years' standing, wherever rendered, cannot be enforced in New Jersey. See also, Matanuska, supra, 365 F.2d 358. The simple answer is that the argument is only theoretical. We need not address the thirty-year problem because the judgment involved here was rendered less than twenty years ago. We focus only on the fact that, when the instant domestication proceeding was filed, the judgment was still viable under the law of the rendering State and was, at that moment, well within the limits of our twenty-year rule. That the judgment, thereafter, became unenforceable in California has no bearing on the outcome under the express terms of N.J.S.A. 2A:14-5.
To the extent we have reached this conclusion on the basis of the plain meaning of our statutes, we have no reason to believe we have ignored Learned Hand's caution against sacrificing the rule of reason or the policies undergirding a provision in order to give effect, slavishly, to that provision's ostensibly plain terms.[2] Literal interpretation of N.J.S.A. 2A:14-5 and 2A:49A-27 does not produce an unreasonable or illogical result, or one at variance with the policy underpinnings of New Jersey law governing the relationships between judgment creditors and judgment debtors; it merely entails a straightforward application of a sensible legal policy, the goal in every statutory construction exercise.
Reversed and remanded for further proceedings under the UEFJA.
NOTES
[1] The record on appeal contains no transcript of a court proceeding on August 27, 2004.
[2] "There is no more likely way to misapprehend the meaning of language  be it in a constitution, a statute, a will or a contract  than to read the words literally, forgetting the object which the document as a whole is meant to secure." Central Hanover Bank & Trust Co. v. Commissioner, 159 F.2d 167, 169 (2d Cir.), cert. denied, 331 U.S. 836, 67 S.Ct. 1518, 91 L.Ed. 1848 (1947).